# IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

## NO. 23-30069

_____

### UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

**v.**

### ELLIOTT STERLING,
*Defendant-Appellant*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA, NO. 3:20-CR-52-1

_____

## ORIGINAL BRIEF FOR THE APPELLANT
## ELLIOTT STERLING

_____

SAMUEL H. WINSTON, La. Bar No. 34821
JEIGH L. BRITTON, La. Bar No. 39820
Winston Bergeron, LLP
1700 Josephine Street
New Orleans, Louisiana 70113
Telephone: 504-577-2500
Facsimile: 504-577-2562
E-Mail: sam@winstonbergeron.com
jeigh@winstonbergeron.com

**ATTORNEYS OF RECORD FOR APPELLANT**

# I.    CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of these proceedings. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

<u>Judges:</u>
Brian A. Jackson
United States District Court Judge
Middle District of Louisiana

Richard L. Bourgeois, Jr.
United States Magistrate Judge
Middle District of Louisiana

<u>Appellee:</u>
The United States of America

<u>Attorneys for Appellee:</u>
Mary Patricia Jones (on appeal)
Assistant United States Attorney

Elizabeth Eudora White (on appeal and in the district court)
Assistant United States Attorney

Rene Irvin Salomon (in the district court)
Assistant United States Attorney

Jessica C. Jarreau (in the district court)
Assistant United States Attorney

John Brady Casey (in the district court)
Assistant United States Attorney

Appellant:
Elliott Sterling

Attorneys for Appellant:
Samuel H. Winston (on appeal)
CJA Appointed Counsel

Jeigh L. Britton (on appeal)
CJA Appointed Co-Counsel

Gideon T. Carter, III (in the district court)
Stand-by Trial Counsel

Brent M. Stockstill (in the district court)
CJA Appointed Trial Counsel

Harry Lawrence Daniel, III (in the district court)
CJA Appointed Trial Counsel

Mark Upton (in the district court)
Appointed Federal Public Defender

Kathryn Jakuback Burke (in the district court)
Retained Trial Counsel

Jacob G. Longman (in the district court)
Retained Trial Co-Counsel

Jeanna Wheat (in the district court)
Retained Trial Co-Counsel

Other Interested Parties:
Marci Blaize
Federal Public Defender

Our Lady of the Lake Hospital, Inc.

<u>Attorneys for Interested Party Our Lady of the Lake Hospital, Inc.:</u>
Thomas Richard Temple, Jr.
Alexa Nicole Candelora

New Orleans, Louisiana, this 10th day of August, 2023.

/s/ *Samuel H. Winston*
SAMUEL H. WINSTON, La. Bar No. 34821

## II.    STATEMENT REGARDING ORAL ARGUMENT

Undersigned counsel respectfully requests oral argument because this appeal raises fact-intensive issues and the record is voluminous. Counsel suggests that oral argument would assist this court in making a fair determination.

# III.   TABLE OF CONTENTS

I.    CERTIFICATE OF INTERESTED PERSONS ..................................... ii

II.   STATEMENT REGARDING ORAL ARGUMENT ............................ v

III.  TABLE OF CONTENTS ............................................................... vi

IV.   TABLE OF AUTHORITIES ........................................................ vii

V.    JURISDICTIONAL STATEMENT ............................................... 1

VI.   STATEMENT OF ISSUES ............................................................ 1

VII.  STATEMENT OF THE CASE ....................................................... 2

VIII. SUMMARY OF THE ARGUMENT ................................................ 7

IX.   ARGUMENT ................................................................................ 9

   A.  The district court violated Mr. Sterling's Sixth Amendment right to counsel when it denied Mr. Sterling's requests for new counsel............ 9

   B.  The district court erred in finding that Mr. Sterling voluntarily, knowingly, and intelligently waived his right to counsel. ..................... 24

   C.  The district court erred in allowing Mr. Sterling to represent himself at his own competency hearing. .................................................. 36

   D.  The district court erred in finding that the defendant was competent to represent himself at trial. .......................................................... 41

   E.  The district court abused its discretion in denying Mr. Sterling's motion for a competency evaluation and hearing before sentencing. .. 50

X.    CONCLUSION ............................................................................. 58

XI.   CERTIFICATE OF SERVICE ..................................................... 59

XII.  CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ................... 60

# IV.   TABLE OF AUTHORITIES

**Cases**

*Argersinger v. Hamlin*, 407 U.S. 25 (1972) ..............................................27

*Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016).............................13

*Brewer v. Williams*, 430 U.S. 387 (1976) ................................................27

*Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970) .................. 18, 19, 27, 28

*Brown v. Wainwright*, 665 F.2d 607 (5th Cir. 1982) ............................27

*Burton v. Collins*, 937 F.2d 131 (5th Cir.1991).................................27, 28

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989) ...13

*Cooper v. Oklahoma*, 517 U.S. 348 (1996) ..............................................42

*Cuyler v. Sullivan*, 446 U.S. 335 (1980) .................................................13

*Drope v. Missouri*, 420 U.S. 162 (1975)............................................42, 54

*Dusky v. United States*, 362 U.S. 402 (1960) ............................ 43, 44, 46

*Edwards v. Arizona*, 451 U.S. 477 (1981) ..............................................32

*Entsminger v. Iowa*, 386 U.S. 748 (1967).................................................18

*Fallada v. Dugger*, 819 F.2d 1564 (11th Cir. 1987)..............................54

*Faretta v. California*, 422 U.S. 806 (1975)........................... 27, 33, 43, 45

*Gideon v. Wainwright*, 372 U.S. 335 (1963).............................................18

*Godinez v. Moran*, 509 U.S. 389 (1993) .............................................44, 45

*Indiana v. Edwards*, 554 U.S. 164 (2008)...................................... passim

*Johnson v. McCotter*, 803 F.2d 830 (5th Cir. 1986) ...............................29

*Martel v. Clair*, 565 U.S. 648 (2012) ......................................................13

*Massey v. Moore*, 348 U.S. 105 (1954).....................................................34

*McQueen v. Blackburn*, 755 F.2d 1174 (5th Cir.1985) ..........................32

*Pate v. Robinson*, 383 U.S. 375 (1966).......................................37, 42, 55

*Robinson v. Louisiana*, 606 Fed. Appx. 199 (5th Cir.2015)...................33

*Thompson v. Blackburn*, 776 F.2d 118 (5th Cir. 1985) ........................54

*United States v. Adelzo-Gonzalez*, 268 F.3d 772 (9th Cir. 2001)...... 13, 14

*United States v. Agbonifo*,
20-20293, 2022 WL 808001 (5th Cir. Mar. 16, 2022) ...........................53

*United States v. Benitez-Casas*, 439 Fed.Appx. 307 (5th Cir. 2011) ......16

*United States v. D'Amore*, 56 F.3d 1202 (9th Cir. 1995) .......................15

*United States v. Davis*, 269 F.3d 514 (5th Cir. 2001) ......................33, 39

*United States v. Doke*, 171 F.3d 240 (5th Cir. 1999) .............................42

*United States v. Fields*, 761 F.3d 443 (5th Cir.2014) ............................47

*United States v. Flores-Martinez*, 677 F.3d 699 (5th Cir. 2012) ............53

*United States v. Garrett*, 179 F.3d 1143 (9th Cir.1999) .........................15

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) ..........................13

*United States v. Ibarra*, 236 Fed.Appx. 10 (5th Cir. 2007) .............30, 31

*United States v. Jones*, 421 F.3d 359 (5th Cir. 2005) ................27, 32, 33

*United States v. Jones*, 733 F.3d 574 (5th Cir. 2013) .....................12, 36

*United States v. Joseph*, 333 F.3d 587 (5th Cir. 2003) ...................27, 32

*United States v. Klat*, 156 F.3d 1258 (D.C. Cir. 1998) ...........................37

*United States v. Klein*, 420 Fed. Appx. 471 (5th Cir. 2011) ...............34

*United States v. Kowalczyk*, 805 F.3d 847 (9th Cir. 2015) ...................37

*United States v. Long*, 597 F.3d 720 (5th Cir. 2010) .............................31

*United States v. McEachern*, 465 F.2d 833 (5th Cir. 1972).................55

*United States v. Mesquiti*, 854 F.3d 267 (5th Cir. 2017) ......................36

*United States v. Mullen*, 32 F.3d 891 (4th Cir. 1994).....................19, 21

*United States v. Musa*, 220 F.3d 1096 (9th Cir. 2000) ..........................15

*United States v. Neba*, 901 F.3d 260 (5th Cir. 2018)......................21, 22

*United States v. Purnett*, 910 F.2d 51 (2d Cir.1990)..............................37

*United States v. Romans*, 823 F.3d 299 (5th Cir. 2016) ..................22, 34

*United States v. Ross*, 703 F.3d 856 (6th Cir. 2012).............36, 37, 48, 56

*United States v. Schexnayder*,
22-10087, 2023 WL 3946467 (5th Cir. June 12, 2023) ..........................36

*United States v. Simpson*, 645 F.3d 300 (5th Cir. 2011) .................12, 47

*United States v. Villanueva*,
21-40356, 2022 WL 2067840 (5th Cir. June 7, 2022) ............................42

*United States v. Virgil*, 444 F.3d 447 (5th Cir. 2006)................27, 32, 39

*United States v. White*, 887 F.2d 705 (6th Cir. 1989) ...........................57

*United States v. Williams*, 594 F.2d 1258 (9th Cir. 1979)...............18, 21

*United States v. Young*, 482 F.2d 993 (5th Cir. 1973) ...............13, 16, 20

*United States v. Zedner*, 193 F.3d 562 (2d Cir.1999)............................37

*White v. United States*, 470 F.2d 727 (5th Cir. 1972) ...........................55

*Wood v. Georgia*, 450 U.S. 261 (1981)..................................................13

## Statutes

18 U.S.C. § 4247(d)................................................................................37

U.S. Const. amend VI.......................................................................13, 27

## V.    JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. This is a direct appeal from a final decision of the United States District Court for the Middle District of Louisiana, entering a judgment of conviction and imposing a 132-month term of imprisonment on January 10, 2022. ROA.7056-7057. The Appellant filed a notice of appeal on January 24, 2023, which complies with Fed. R. App. P. 4. ROA.3544-3545.

## VI.    STATEMENT OF ISSUES

1. Whether the district court erred in denying Mr. Sterling's requests for new counsel.

2. Whether the district court erred in finding that Mr. Sterling knowingly and intelligently waived his right to counsel.

3. Whether the district court erred in allowing Mr. Sterling to represent himself at his own competency hearing.

4. Whether the district court erred in finding that the defendant was competent to represent himself at trial.

5. Whether the district court abuse its discretion in failing to hold a competency hearing before sentencing.

# VII. STATEMENT OF THE CASE

## A. Factual Background

Underlying the alleged crimes in this case is the Federal Student Aid ("FSA") Program which aims to assist qualified students in obtaining post-secondary education. ROA.845. The FSA Program was established by the United States Department of Education ("DOE") which provides oversight and administration of the Program. ROA.845.  In order to obtain FSA funds, applicants must complete a Free Application for Federal Student Aid ("FAFSA") every year. ROA.846, 4755. These applications may be completed by a student, parent, or preparer. ROA.846. If the application was completed by a preparer, the preparer must complete a section detailing the preparer's information. ROA.846-847. Preparers are authorized to charge a fee for their services. ROA.4722, 4761.

Once a student is approved, FSA funds are disbursed directly to the student's educational institution. ROA.4746. Any money left over after tuition and fees are paid is credited to the student, also called a credit refund. ROA.4746. The institution deposits the credit refund where the student chooses after the student has confirmed their attendance by

participating in classes for fourteen days. ROA.4746-4747, 5174-5175. The credit refund can be sent to a debit card or bank account. ROA.4748.

On August 3, 2020, Mr. Sterling was indicted by a federal grand jury on nine counts of wire fraud in violation of 18 U.S.C. § 1343; on four counts of financial aid fraud in violation of 20 U.S.C. § 1097 (a); and on one count of engaging in monetary transactions involving property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. ROA.44-65. On October 21, 2021, a superseding indictment was filed, amending the charges to seven counts of wire fraud in violation of 18 U.S.C. § 1343; two counts of financial aid fraud in violation of 20 U.S.C. § 1097 (a); and six counts of engaging in monetary transactions involving property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. ROA.845-871.

The basis of these claims is FAFSA applications submitted by Mr. Sterling that allegedly contained falsities and fraudulent representations. ROA.3591. Mr. Sterling started Sterling Educational Consulting, LLC ("SEC"), a consulting business designed to assist students in pursuing higher education, including assisting in the complicated process of obtaining FSA funds. ROA.852, 4789-4790, 6720.

Mr. Sterling's services focused on Baton Rouge Community College ("BRCC") students. ROA.852. Mr. Sterling assisted students by filling out the FAFSA and took on the role of preparer but did not complete the section designated for a preparer to disclose their information. ROA.3591-3592, 6714. Mr. Sterling also set up various accounts, including FAFSA, email, and banking accounts for students that needed help, so he had access to the usernames and passwords of students' accounts. ROA.6711, 6713-6714, 6729. Mr. Sterling submitted incorrect information, such as addresses, high school diploma information, dependent status, and parents' names on the forms. ROA.3591. He also assisted students in filling out additional paperwork needed by BRCC. ROA.6718.

Once students became eligible for a credit refund by attending class for fourteen days, the credit refund was disbursed. ROA.4746-4747. BRCC uses a third-party, BankMobile Technologies ("BankMobile"), to disburse credit refunds. ROA.4748. Mr. Sterling allegedly created BankMobile accounts for students and would allegedly transfer funds from these accounts into his personal accounts for personal gain. ROA.3594. Some credit refunds went directly into Mr. Sterling's SEC

4

business account as listed on the FAFSA, which he asserts he then disbursed to the students, subtracting his service fee. ROA.6712, 6721, 6734.

## B. Procedural History

Leading up to trial, Mr. Sterling made several requests for new counsel based on a complete breakdown in communication and an irreconcilable conflict. ROA.127, 3676. The magistrate judge and district court repeatedly denied these requests. ROA.132-138, 3755, 3798. When the district court gave Mr. Sterling only one other choice to proceed pro se, Mr. Sterling reluctantly agreed. ROA.3679, 3715-3716. At a subsequent hearing, the district court found Mr. Sterling knowingly and intelligently waived his right to counsel. ROA.3798. Months later, the district court ordered a competency evaluation and hearing where Mr. Sterling was allowed to represent himself at this hearing. ROA.9878-9879, 9931.

A nine-day jury trial was held from March 3, 2022 to March 16, 2022. ROA.4297, 6804. The Government called 34 witnesses. ROA. 4571, 4912, 5672, 6116, 6251, 6619. Mr. Sterling called 8 witnesses and testified, himself. ROA.4913, 5288, 6619. On March 16, 2022, the jury

found Mr. Sterling guilty as charged on all fifteen counts. ROA.1082-1087, 6967-6970.

After the trial, Mr. Sterling's concerning mental health status devolved further. ROA.10030-10036. Post-trial counsel motioned to have Mr. Sterling's competency evaluated before sentencing, citing their own interactions with Mr. Sterling and additional medical records. ROA.10030-10036. However, the district court denied the motion and compelled Mr. Sterling to sentencing. ROA.12749-12762.

On January 10, 2023, Mr. Sterling was sentenced to 132 months for the seven counts of wire fraud in violation of 18 U.S.C. § 1343; 60 months for the two counts of financial aid fraud in violation of 20 U.S.C. § 1097 (a); and 120 months for the six counts of engaging in monetary transactions involving property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. ROA.7056-7057. The sentences on all counts are to run concurrently. ROA.7057. Mr. Sterling was also ordered to pay restitution in the amount of $2,850,422.00. ROA.7059.

## VIII. SUMMARY OF THE ARGUMENT

Mr. Sterling was denied his rights to present a defense – his right to conflict-free counsel and his right to a fair trial. Mr. Sterling made multiple requests for new counsel because of his court-appointed counsel's conflict of interest and a lack of communication and trust between them. The court erroneously denied these requests by improperly putting the focus on counsel's competency and abilities rather than on the quality of the particular representation at hand. The court further erred by repeatedly leading Mr. Sterling to believe he had only one choice to obtain adequate representation – to proceed pro se. Mr. Sterling pushed back by continually asserting that he simply wanted new counsel or access to his assets to hire counsel, before eventually acquiescing to his only choice – to represent himself. These interactions demonstrate that Mr. Sterling did not voluntarily elect to represent himself.

Moreover, concerns with Mr. Sterling's mental health and competency call into question whether his right to counsel was knowingly and intelligently waived. While aware of these issues, the district court still erroneously found that Mr. Sterling could proceed pro se. It was not

until months later that the district court ordered a competency evaluation and hearing on a central issue that should have been decided well before trial. And still, without sufficient medical history, the appointed medical examiner concluded that Mr. Sterling was competent.

The district court erred again by paradoxically allowing Mr. Sterling to represent himself at his own competency hearing. This led to an erroneous finding that Mr. Sterling was competent to represent himself at trial in violation of his due process right to a fair trial.

Before sentencing, Mr. Sterling's post-trial counsel gained access to relevant medical records and motioned the court for another competency evaluation and hearing. The district court erred again in denying the motion and forcing Mr. Sterling to sentencing. Due to the numerous errors and constitutional violations, Mr. Sterling's conviction and sentence should be reversed.

# IX.   ARGUMENT

## A. The district court violated Mr. Sterling's Sixth Amendment right to counsel when it denied Mr. Sterling's requests for new counsel.

### *i.   Relevant Facts*

On October 30, 2020, Mr. Sterling sent a letter to the magistrate court expressing concerns with his appointed counsel, Mr. Brent Stockstill. ROA.127. Mr. Sterling cited a lack of communication, Mr. Stockstill's general disinterest in hearing what Mr. Sterling had to say about his case, a conflict of interest, and the lack of discovery received. ROA.127. Specifically, Mr. Sterling was concerned about Mr. Stockstill's relationship with the attorney who represented the officers involved in the killing of his cousin, Alton Sterling. ROA.127. Mr. Sterling confronted Mr. Stockstill about the conflict and Mr. Stockstill told him to leave. ROA.127. Mr. Sterling also detailed numerous communication issues to the court and asked "how can somebody represent me who I can't have a regular conversation about the case with?" ROA.127. The court interpreted the letter as a request for new counsel and set a hearing for November 5, 2020. ROA.130.

At the hearing, Mr. Sterling explained to the court that every time he had a call with Mr. Stockstill it was uncomfortable and that Mr. Stockstill did not want to talk to him about anything. ROA.3657. Mr. Sterling also explained that Mr. Stockstill belittled him when he questioned how Mr. Stockstill was going to create a defense if the Government's witnesses were still unknown, to which Mr. Stockstill responded, "go to law school." ROA.3657. Mr. Sterling was also displeased with Mr. Stockstill's repeated requests for continuances and that Mr. Stockstill responded to those concerns by telling Mr. Sterling to get a private attorney if he didn't like what Mr. Stockstill was doing. ROA.3660.

During the course of the hearing, Mr. Sterling stated numerous times that he did not want Mr. Stockstill as his attorney and that Mr. Stockstill did not communicate with him. ROA.3663, 3676, 3679. Mr. Sterling pleaded to the court: "you're asking me to keep someone to represent me that I can't even much talk to…He doesn't want to talk to me at all. I brought a box full of evidence. He said, 'I don't need to look at that." ROA.3680. Mr. Stockstill admitted that he did not want to look at the evidence because he did not have the Government's discovery.

ROA.3680. Nevertheless, the magistrate court denied the motion to substitute counsel the next day. ROA.132-138.

As a result, Mr. Sterling had Mr. Stockstill file a motion to proceed pro se. ROA.170. On February 24, 2021, the district court held a hearing on the motion where Mr. Sterling reiterated his issues with Mr. Stockstill's representation. ROA.3696. Mr. Sterling told the court about how he believed Mr. Stockstill had been dishonest with him and how Mr. Stockstill told him that he would lose the case. ROA.3696. Mr. Sterling again brought up the conflict of interest issue regarding the Alton Sterling case. ROA.3715. Mr. Sterling stated,

> I have one more question. I just don't understand why I keep getting denied if he don't want to represent me. I gave y'all – I told y'all what's going on. He did express his feelings. He don't want to represent me so I don't get why y'all keep denying it to keep him from (sic) representing me.

ROA.3747-3748.

However, the court dismissed Mr. Sterling's concerns, instead emphasizing Mr. Stockstill's experience and competency (neither of which Mr. Sterling challenged). ROA.3701-3703, 3712-3713. The court found that it was satisfied with Mr. Stockstill's representation and deferred ruling on the motion to proceed pro se. ROA.3712, 3748. Ten

days later, the district court appointed co-counsel, Mr. Harry Daniels, to assist Mr. Stockstill given the severity of the charges and set a second hearing on the motion to proceed pro se for March 16, 2021. ROA.187, 3750, 3753.

On the date of the hearing, Mr. Sterling filed a motion to dismiss in open court which declared that his Sixth Amendment right was violated "with the attorney and client relationship." ROA.188-189. The motion also discussed his beliefs that he was being targeted by the Government because of his involvement in the Alton Sterling case. ROA.190. At the hearing, Mr. Sterling again brought up his issues with Mr. Stockstill and the district court again emphasized appointed counsels' extensive experience as an attorney. ROA.3754-3755, 3778. Mr. Stockstill told the court that by the time of the hearing there had been a complete breakdown in communication and that Mr. Sterling would not talk to him. ROA.3775-3776. Mr. Daniels had only two brief conversations with Mr. Sterling before the hearing but expressed the same – that Mr. Sterling did not want to meet with him. ROA.3758, 3776.

The district court ultimately upheld the magistrate judge's finding that Mr. Sterling was not entitled to substitute counsel and allowed Mr.

Sterling to proceed pro se. ROA.3755, 3798. The court also appointed standby counsel, advising Mr. Sterling that he would have no right to object to whoever the court appointed. ROA.3796. The court later appointed Mr. Gideon T. Carter, III as standby counsel. ROA.199.

### ii.    *Standard of Review*

This Court reviews Sixth Amendment violations de novo. *United States v. Simpson*, 645 F.3d 300, 307 (5th Cir. 2011). However, if the court finds no such violation, the district court's denial of a motion to substitute counsel is reviewed for abuse of discretion. *Id*; *United States v. Jones*, 733 F.3d 574, 587 (5th Cir. 2013).

### iii.    *General Legal Standards*

The "Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–625 (1989)); U.S. Const. amend VI. This Sixth Amendment right to counsel also extends to guarantee representation that is

adequate and free from conflicts. *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).

In reviewing a district court's denial of a motion to substitute, this Court must consider three important factors: (1) the adequacy of the district court's inquiry into the defendant's complaint, (2) the cause and extent of any conflict or breakdown in communication, and (3) the timeliness of the motion. *Martel v. Clair*, 565 U.S. 648, 663 (2012); *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777 (9th Cir. 2001); *Battaglia v. Stephens*, 824 F.3d 470, 472 (5th Cir. 2016).

    iv.   *The district court's inquiry into Mr. Sterling's dissatisfaction with appointed counsel was inadequate.*

Before ruling on a motion to substitute counsel due to an irreconcilable conflict, a district court must conduct an inquiry to address the defendant's dissatisfaction, distrust, and concern. *Adelzo-Gonzalez*, 268 F.3d at 777; *see also United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973). The inquiry must be adequate, providing a sufficient factual basis to evaluate (1) the depth of any conflict between the defendant and counsel, (2) the extent of any breakdown in communication, (3) how much time may be necessary for a new attorney to prepare, and (4) any delay

or inconvenience that may result from substitution. *Adelzo-Gonzalez*, 268 F.3d at 777; *see also Young*, 482 F.2d at 995.

In *Adelzo-Gonzalez*, the court reversed a defendant's conviction because the district court failed to recognize the material breakdown in communication between the defendant and his court-appointed attorney. *Adelzo-Gonzalez*, 268 F.3d at 781. The defendant motioned the court three times for a new attorney by sending letters directly to the court. *Id* at 774. Among the reasons for the motions, the defendant cited growing animosity due to feeling that his attorney was not listening to him, that he could not get along with him, and that the attorney used profanity while meeting with him. *Id*.

Even though the district court held a hearing each time the defendant filed a motion, the court of appeals found that two of the district court's three inquiries were inadequate. *Id*. Focusing on the method of the district court's inquiry and the burden of proof it imposed, the court found that the "district court asked only open-ended questions and put the onus on defendant to articulate why appointed counsel could not provide competent representation." 268 F.3d at 777.

As *Adelzo-Gonzales* demonstrates, the district court here failed to adequately inquire into the conflict, distrust, and breakdown in communication that existed between Mr. Sterling and his counsel. Both the magistrate judge and district court improperly focused the inquiry on counsel's ability rather than the issues Mr. Sterling raised about communication and the quality of the attorney-client relationship. *See United States v. Musa*, 220 F.3d 1096, 1102 (9th Cir. 2000) ("Even if a defendant's counsel is competent, a serious breakdown in communication can result in an inadequate defense."); *see also United States v. D'Amore*, 56 F.3d 1202, 1206 (9th Cir. 1995), overruled on other grounds by *United States v. Garrett*, 179 F.3d 1143 (9th Cir.1999) ("[A] court may not deny a substitution motion simply because it thinks current counsel's representation is adequate.").

In the instant case, the magistrate judge and the district court stated several times that Mr. Sterling's appointed attorneys were experienced and competent while ignoring the clear distrust and lack of communication between Mr. Sterling and them. ROA.3650, 3678, 3701-3703, 3712, 3732, 3778, 3792. Similar to the defendant in *Adelzo-Gonzalez,* Mr. Sterling made multiple requests for new counsel by

sending letters to the magistrate and district court. The courts below also improperly put the burden on Mr. Sterling to demonstrate the issues with his representation and concluded that simply because Mr. Sterling had excellent representation, new counsel was not warranted and Mr. Sterling must accept them. Thus, the district court abused its discretion in denying Mr. Sterling's requests for new counsel on several occasions despite clear indications of an irreconcilable conflict.

  v. *Substitution of counsel was warranted due to a conflict of interest, lack of trust, and breakdown in communication.*

In order to warrant a substitution of appointed counsel, there must be good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict, which leads to an apparently unjust verdict. *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973); *see also United States v. Benitez-Casas*, 439 Fed.Appx. 307, 308 (5th Cir. 2011).

The mistrust and breakdown in communication involved in this case is neither hypothetical nor contrived; the record here demonstrates that it arose from a serious conflict between Mr. Sterling and his counsel. Among other issues, Mr. Sterling was concerned about his counsel's relationship with another attorney who represented the officers who

17

killed Alton Sterling, his cousin, because the attorneys were friends on Facebook. ROA.127. This conflict was a serious concern for Mr. Sterling as he also believed the Government was selectively prosecuting him for publicly speaking out against the Department of Justice for its handling of the Alton Sterling case. ROA.127, 190, 498-500. On numerous occasions, both in open court and in motions, Mr. Sterling raised the issue of selective prosecution and his connection to Alton Sterling. ROA.660. Mr. Sterling's concern was so prevalent that the Government eventually filed a motion to exclude him from referencing Alton Sterling and the Department of Justice in his defense. ROA.460-469.  This conflict led to a deep distrust and breakdown in communications between Mr. Sterling and his counsel. ROA.3775-3776, 3786.

As a result, a conflict of interest existed here that warranted a substitution of counsel. Such a conflict exists where a defendant "was forced into trial with a particular lawyer with whom he was dissatisfied, with whom he could not cooperate, and with whom he would not, in any manner whatsoever, communicate." *Brown v. Craven*, 424 F.2d 1166, 1169 (9th Cir. 1970). Moreover, "to compel one charged with grievous crime to undergo a trial with the assistance of an attorney with whom he

has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever." *Id* at 1770 (citing *Entsminger v. Iowa*, 386 U.S. 748 (1967); *Gideon v. Wainwright*, 372 U.S. 335 (1963)).   In the instant case, the conflict goes even farther – Mr. Sterling's lack of trust in counsel due to the conflict led him to concede to pro se representation.

Mr. Sterling not only repeatedly requested new appointed counsel, he also expressed his desire to hire counsel, as discussed more fully below. However, the magistrate judge and district court did not take these requests seriously. *Instead*, the court below gave Mr. Sterling the *Sophie's Choice* of proceeding with counsel whom he distrusted or to proceed pro se – an unconstitutional choice between two unconstitutional options.

In *United States v. Williams*, the defendant motioned twice for new counsel due to incompatibility, lack of communication, quarrels, and threats. 594 F.2d 1258, 1260 (9th Cir. 1979). Faced with the choice of accepting counsel whom he was at serious odds with or representing himself, the defendant chose to proceed pro se. *Id*. The court applied *Brown*'s reasoning and held that the case differed only in that the

19

defendant in *Brown* chose to be represented by counsel he sought to be rid of, but the end result was the same – "[u]nder either circumstance the defendant is deprived of the constitutionally guaranteed right to have the effective assistance of counsel at trial." *Id*. Accordingly, the court of appeals reversed because the defendant was deprived of his Sixth Amendment right to counsel. *Id* at 1261.

Additionally, in *United States v. Mullen*, the defendant reluctantly chose to proceed pro se rather than with counsel she lacked confidence in and could not communicate with. 32 F.3d 891, 897 (4th Cir. 1994). The defendant's motion to substitute counsel was filed well before trial but not ruled on until the day of trial. *Id* at 896. After denying the motion, the court reiterated to the defendant that she only had two choices: keep counsel or proceed pro se. *Id* at 894. On review, the court of appeals vacated the conviction, finding that although the lower court adequately inquired into the complaint, the breakdown in communication and timeliness of the motion was sufficient to show the district court abused its discretion. *Id* at 898. Notably, counsel would not consult with the defendant about the facts of her case and this was her first request for substitution of counsel. *Id* at 897.

Like *Williams* and *Mullen*, Mr. Stockstill refused to accept evidence from Mr. Sterling, to go over the discovery with Mr. Sterling, and to adequately communicate with Mr. Sterling. ROA.3657-3658, 3663. Mr. Sterling stated that Mr. Stockstill doesn't talk on the phone; every time Mr. Sterling calls, Mr. Stockstill is busy or gone. ROA.3663. Mr. Stockstill's secretary made it clear that he didn't want Mr. Sterling to call. ROA.3664. Mr. Sterling had to resort to showing up at his office unannounced to meet with Mr. Stockstill. ROA.3658-3659, 3663. There were admitted disagreements and quarrels between them, with Mr. Stockstill belittling his client. This was also Mr. Sterling's first request for substitution of counsel that was made well before trial. Importantly, Mr. Sterling did not receive vigorous and able representation because he was forced to proceed pro se. *Compare Young*, 482 F.2d at 996 (no irreconcilable conflict or breakdown in communication where defendant made general comments of dissatisfaction and counsel failed to inform defendant that he was being transferred to another prison; no Sixth Amendment violation because defendant received vigorous and able representation).

21

Accordingly, because a substitution of counsel was warranted and not granted, Mr. Sterling's Sixth Amendment right to counsel was violated.

> *vi.   Mr. Sterling's requests for substitution of counsel were timely.*

The right to appointed counsel of choice must also be balanced against the needs of fairness and the scheduling demands of the court's calendar. *United States v. Neba*, 901 F.3d 260, 265 (5th Cir. 2018). Considerations of fairness include: "(1) whether a continuance would be required; (2) whether the party's concerns were based on anything of a factual nature; (3) whether the party requested substitution of counsel late in the case; and (4) whether a continuance could compromise the availability of key witnesses." *Neba*, 901 F.3d at 265 (internal citations omitted).

Denying a motion to substitute counsel when a defendant makes a strong showing of irreconcilable conflict to the district court well before trial is reversible error. *Williams*, 594 F.2d at 1260 (motion to substitute counsel filed one month before trial); *Mullen*, 32 F.3d at 898 (motion to dismiss attorney was filed 27 days before trial); *compare United States v. Romans*, 823 F.3d 299, 312 (5th Cir. 2016) (although motions to

substitute counsel were filed more than six months before trial, one motion was withdrawn and defendant continued to work with counsel); *compare Neba*, 901 F.3d at 266 (two substitutions of counsel had been granted before the third motion was made within a week of trial and after the case had been pending for almost a year).

In the instant case, Mr. Sterling made his first motion to substitute counsel well prior to trial. The case had been pending for approximately three months before the court granted a continuance on October 21, 2020 due to the volume of discovery. ROA.124. The court set a status conference for December 10, 2020 to choose a new trial date. ROA.125. On October 30, 2020, months before the trial date would even be selected, Mr. Sterling requested new counsel. ROA.127. Given his showing of an irreconcilable conflict and proper notice of his request for new counsel, the district court's denial of Mr. Sterling motion to substitute counsel was reversible error.

**B. The district court erred in finding that Mr. Sterling voluntarily, knowingly, and intelligently waived his right to counsel.**

   *i.   Relevant Facts*

At Mr. Sterling's initial appearance on September 1, 2020, Mr. Sterling told the court he wanted counsel to represent him. ROA.96. The court appointed Mr. Stockstill to represent Mr. Sterling, but issues with communication and trust were raised in a request for new counsel, discussed above. ROA.127. At the November 5, 2020 hearing on the request for new counsel, Mr. Sterling made it clear that his true desire was new counsel. ROA.3676. He eventually stated that he would represent himself, but only after the magistrate judge made him believe it was his only choice. The hearing transcript makes this plain:

- In response to Mr. Sterling's complaints about his appointed counsel, the court stated "if you don't like the way [Mr. Stockstill] wants to do the job, you can represent yourself." ROA.3661.

- Mr. Sterling: "I don't want him as an attorney."
  The court: "Okay, So what do you - I told you, you can represent yourself. What do you want me to do?"
  Mr. Sterling: "just take him off my case."
  ROA.3676.

- The court: "I can't go, go grab somebody else. If, as you go through this, you decide if Mr. Stockstill's not the answer for you and you'd rather just do it on your own…"

Mr. Sterling: "I've already made my decision. I don't want him. I
don't want him as counsel."
The court: "So you would rather represent yourself."
Mr. Sterling: "Correct."
ROA.3679.

- The court: "So if we get rid of Mr. Stockstill, what do you want?"
  Mr. Sterling: "To go to trial."
  The court: "And you want to do that by yourself?"
  Mr. Sterling: "That's fine."
  The court: "You don't want a new attorney?"
  Mr. Sterling: "If you can give me a new attorney, that's fine too."
  The court: "Would you prefer a new attorney?"
  Mr. Sterling: "Correct."
  ROA.3682.

After the motion for new counsel was denied, Mr. Sterling had Mr.

Stockstill prepare a motion to proceed pro se. ROA.170. At the February

24, 2021 hearing on the motion to proceed pro se, Mr. Sterling made clear

to the district court that he wished to have an attorney but he would

proceed pro se if that was his only choice. ROA.3716. The transcript

demonstrates this desire clearly:

- The court: "you indicated at your initial appearance…that you did
  not have the means to hire your own attorney. And for that reason,
  Mr. Stockstill was appointed…"
  Mr. Sterling: "I do have the means, but my assets are being held."
  ROA.3695.

- The court: "Because where we are now, we have [magistrate court's]
  order denying Mr. Stockstill's request to withdraw from the
  case…So what that means is that you will be left to try this case on
  your own."

25

Mr. Sterling: "Okay. Yes, sir."
The court: "Is it you preference to try the case yourself rather than having Mr. Stockstill try the case?"
Mr. Sterling: "Yes, sir. I would like…I don't understand why I can't use my assets to hire an attorney."
ROA.3715-3716.

- Mr. Sterling: "But with my assets, nobody went through them. It just all was taken. Now you're telling me to defend myself with nothing."
  The court: "…You're entitled at this point to either move forward with appointed counsel, which you appear not willing to do, or to represent yourself in these proceedings."
  ROA.3719-3720.

- Mr. Sterling: "I don't understand why my assets can't be looked at for me to hire my own attorney." ROA.3745.

Additionally, Mr. Sterling researched and brought to the court's attention a case where a defendant was able to use his assets to hire an attorney. ROA.3716. This further evidenced his desire to be represented by counsel. The district court took the motion under advisement. ROA.3748.

Three weeks later, on March 16, 2021, the district court held a second hearing on Mr. Sterling's motion to proceed pro se. ROA.3753. Before the hearing, the court appointed co-counsel, Mr. Daniels, to assist Mr. Stockstill because of the complexity of the case. ROA.3753. But at this point, there had been a complete breakdown in communication.

ROA.3775-3776. The distrust had grown so substantially that Mr. Sterling felt he was the only person that was going to put in the time to protect his fundamental rights. ROA.3754, 3786. However, the district court found that Mr. Sterling knowingly and intelligently waived his right to counsel. ROA.3798.

On June 2, 2021, Mr. Sterling filed another motion to dismiss where he detailed his efforts to hire an attorney but every attorney he reached out to was too expensive. ROA.255-257. On July 14, 2021, Mr. Sterling filed an opposition to the Government's Motion to exclude testimony and evidence regarding Alton Sterling. ROA.498-500. In this motion he discussed again the difficulty of hiring counsel because of his relationship to Alton Sterling and the corruption of the Department of Justice. ROA.498-500.

## ii. *Standard of Review*

This court reviews de novo whether a defendant's decision to represent himself was constitutionally permissible under the circumstances, including whether the waiver of the right to counsel was made knowingly and intelligently. *United States v. Virgil*, 444 F.3d 447,

452 (5th Cir. 2006); *United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003); *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005).

    *iii.*    *General Legal Standards*

The Sixth Amendment guarantees to a defendant, *inter alia*, the right to counsel at all critical stages of the prosecution. U.S. Const. amend VI. This right to counsel can be waived only under certain, limited circumstances. *Faretta v. California*, 422 U.S. 806, 835 (1975). In order for a defendant to represent himself and proceed pro se, he must voluntarily, knowingly, and intelligently forgo counsel, and the request must be clear and unequivocal. *Faretta*, 422 U.S. at 835; *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982). This knowing and intelligent waiver is so fundamental that no person may be imprisoned for any offense without it. *Argersinger v. Hamlin*, 407 U.S. 25, 40 (1972).

"In the absence of a clear and knowing election, a court should not quickly infer that a defendant unskilled in the law has waived counsel and has opted to conduct his own defense." *Brown*, 665 F.2d at 610. Instead, courts must indulge every reasonable presumption against waiver of counsel. *Id*; *Brewer v. Williams*, 430 U.S. 387, 404 (1976); *Burton v. Collins*, 937 F.2d 131, 133 (5th Cir.1991) (there is a

presumption against finding a waiver of the right to counsel). Moreover, the right to self-representation is not effective until asserted. *Brown*, 665 F.2d at 610.

> iv.   *Mr. Sterling's request to proceed pro se was neither clear nor unequivocal.*

In the instant case, Mr. Sterling's main concern was to get different counsel. It was not that he wanted to represent himself. Mr. Sterling reiterated to the court numerous times that he wanted a different attorney and only resorted to agreeing to represent himself after the court gave him the false choice of representing himself or keeping his distrusted, conflicted counsel. This was not a clear and unequivocal request to represent himself and was instead the only alternative given to Mr. Sterling by the court.

In *Burton*, this Court found there was no clear and unequivocal waiver where the defendant informed the court that he wanted to fire his attorney and asked, "May I represent myself?" 937 F.2d at 132. Instead, the court interpreted this question as an inquiry into the possible alternatives. *Id* at 134. While it is certainly reasonable to view this inquiry from a defendant as asking permission for a decision already made, this Court refused to accept this presumption because the

ambiguity of the defendant's intent did not meet the strict constitutional safeguards around waiver of the right to counsel. In sum, waiver cannot be inferred from context.

Likewise, the context of Mr. Sterling's supposed waiver of his right to counsel creates such ambiguity that this Court cannot find that waiver to be constitutionally sufficient. The record shows that Mr. Sterling repeatedly requested new counsel and made inquiries about his assets so that he could hire an attorney. The transcripts of proceedings before both the magistrate and district judges demonstrate Mr. Sterling had a fundamental misunderstanding of his situation, asking over and over again if he could procure counsel in some other way. This doubt is more than enough to find Mr. Sterling's supposed waiver invalid.

Also, in *Johnson v. McCotter*, the defendant sent a letter to the court stating he would defend himself if he had the proper equipment but he did not believe the court would provide it to him. 803 F.2d 830, 834 (5th Cir. 1986). This Court found that the statement was ambiguous at best and held the defendant did not clearly and unequivocally assert his desire to forgo legal representation. *Id*. A simple qualifying statement (if he had the proper equipment) was enough to create a vitiating ambiguity.

30

Here, Mr. Sterling's letters to the court laid out his dissatisfaction with his current counsel. He stated repeatedly that he wanted new counsel. When the court told him his only other option was to proceed pro se, Mr. Sterling pushed back several times, asserting that he just didn't want this counsel but he did want an attorney. It was only after several hearings and ultimatums that Mr. Sterling acquiesced to representing himself.

Even statements that appear on their face to constitute a clear waiver of a defendant's right to counsel are insufficient for this Court – the clarity of the statement must be coupled with equally clear context. In *United States v. Ibarra*, a defendant's counsel told the trial court the defendant "may prefer to represent himself." 236 Fed.Appx. 10 (5th Cir. 2007). The defendant stated that he would not cooperate even if provided another attorney, stating "I don't want him. I don't need no attorneys" and "I don't really agree to an attorney." *Id* at 12. This Court reasonably interpreted the statements as verbal protests meant to express the defendant's disagreement with his detention and the justice system generally rather than a clear and unequivocal assertion to the right of self-representation. *Id* at 14. This Court refused to infer a waiver of the

right to counsel. *Id*; *see also United States v. Long*, 597 F.3d 720, 726 (5th Cir. 2010) (finding that there was not a clear and unequivocal waiver of the right to counsel after the defendant fired his appointed counsel and stated he was instead the attorney in fact; these actions were characterized as a general rebellion against the system).

Even after filing a motion to proceed pro se, Mr. Sterling continued to bring up his issues with his appointed counsel and repeatedly questioned the court about his inability to use his assets to hire an attorney. He also expressed his general displeasure with the justice system and the Government, alleging that they were out to get him. *E.g.* ROA.3656, 3659, 3747. Like *Ibarra* and *Long*, Mr. Sterling's statements and actions both militate against a finding of waiver, and Mr. Sterling did not clearly and unequivocally invoke his right to self-representation.

Markedly, even after the district court allowed Mr. Sterling to proceed pro se, he filed additional motions that detailed his ongoing efforts to hire counsel and difficulties due to expense and his relationship to Alton Sterling.

    *v.   Mr. Sterling's waiver of his right to counsel was not voluntarily, knowingly, or intelligently made.*

Whether a voluntary, knowing, and intelligent waiver of constitutional rights has occurred is determined according to the totality of the circumstances, including the defendant's age, education, background, experience, and conduct. *Edwards v. Arizona*, 451 U.S. 477, 487 (1981); *Joseph*, 333 F.3d at 590. The court must ensure that the waiver is not the result of coercion or mistreatment and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practicality of waiving the right to counsel. *Joseph*, 333 F.3d at 590. "The district court must also consider the stage of the proceedings and the setting in which the waiver is advanced." *United States v. Virgil*, 444 F.3d 447, 453 (5th Cir. 2006) (*citing McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir.1985) (internal citation omitted)).

"A defendant who wishes to waive the right to counsel should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with his eyes open." *Jones*, 421 F.3d at 363 (citing *Joseph*, 333 F.3d at 589.)

In *United States v. Davis*, this Court vacated a conviction based on the conclusion that the district court's warning against self-representation did not satisfy the requirements of *Faretta*. 269 F.3d 514 (5th Cir. 2001). The district court recommended to the defendant that it was better to proceed with an attorney. *Id* at 519. A court's repeated confrontation of the defendant with the choice to be represented by counsel is also not enough. *Robinson v. Louisiana*, 606 Fed. Appx. 199, 211 (5th Cir.2015); *Jones*, 421 F.3d at 364 (general warnings are insufficient – the court recommended to the defendant that he have an attorney and that his appointed counsel was highly qualified).

Here, the district court repeatedly emphasized the competence and experience of the attorneys when warning Mr. Sterling about proceeding pro se. There is also some evidence of pressure put on the defendant's choice to proceed pro se as he was repeatedly told that his only choice left was to proceed pro se. There was also a lack of understanding demonstrated on Mr. Sterling's part as to why he could not hire an attorney. Although the district court did give some warning of the risks of self-representation, it had already been made clear to Mr. Sterling that it was his only choice, thus making his waiver involuntary. See *United*

*States v. Romans*, 823 F.3d 299, 313 (5th Cir. 2016) (holding a waiver was involuntary because the defendant only chose to proceed pro se after the district court refused to substitute counsel – a district court cannot force a defendant to choose between constitutionally deficient counsel and no counsel at all).

The district court also failed to sufficiently inquire into Mr. Sterling's background and medical history. Courts determining whether a defendant can knowingly and intelligently waive their right to counsel must consider the defendant's mental and emotional faculties in making that decision. *See United States v. Klein*, 420 Fed. Appx. 471, 472 (5th Cir. 2011) (record showed that the defendant suffered from a mental instability which led to suicide attempts, which was a factor the court should have considered when admonishing the defendant of the disadvantages of pro se representation); *see also Indiana v. Edwards*, 554 U.S. 164, 178 (2008) (the Constitution permits courts to insist upon representation by counsel for those competent enough to stand trial but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves); *see also Massey v. Moore*, 348 U.S. 105, 108 (1954) ("[o]ne might not be insane in the sense

of being incapable of standing trial and yet lack the capacity to stand trial without the benefit of counsel").

As discussed more fully below, Mr. Sterling's competence calls into question whether his purported waiver was knowing and intelligent. But here, even though the district court was made aware on two occasions that Mr. Sterling had recently received treatment for mental health issues including self-harming behavior, there is no evidence the district court took this into consideration before allowing Mr. Sterling to represent himself. These factors under the totality of the circumstances weigh against a finding that Mr. Sterling knowingly and intelligently waived his right to counsel.

## C. The district court erred in allowing Mr. Sterling to represent himself at his own competency hearing.

### i. *Relevant Facts*

Despite being aware of Mr. Sterling questionable mental health status, the district court found that Mr. Sterling competently waived his right to counsel and could proceed pro se at trial. ROA.3798. The district court also appointed standby counsel. ROA.199. Months later, the district court ordered a competency evaluation and held a hearing. ROA.9878-9879, 9931. The court appointed Dr. Thompson to evaluate Mr. Sterling

and testify about his findings at the competency hearing. ROA.9878-9879, 9931.

### ii.  Standard of Review

Counsel is unaware of any cases from this Court that directly address the standard of review on whether a criminal defendant may waive his right to counsel and represent himself at his own competency hearing. However, this Court does review constitutional challenges de novo, including whether a defendant validly waived his Sixth Amendment right to counsel, which right extends to all stages of the criminal process. *See e.g., United States v. Schexnayder*, 22-10087, 2023 WL 3946467, at *2 (5th Cir. June 12, 2023); *United States v. Mesquiti*, 854 F.3d 267, 271 (5th Cir. 2017); *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005).

The Sixth Circuit has held that a complete absence of counsel at a critical stage of a criminal proceeding is a *per se* Sixth Amendment violation. *United States v. Ross*, 703 F.3d 856, 873 (6th Cir. 2012) (joining the Third, Fourth, Eighth, Ninth, Tenth, and D.C. Circuits holding a competency hearing is a critical stage of trial).

*iii.   Discussion*

During a competency hearing, "the person whose mental condition is the subject of the hearing *shall* be represented by counsel." 18 U.S.C. § 4247(d) (emphasis added). "[I]t is contradictory to argue that a defendant may be incompetent [to stand trial], and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate v. Robinson*, 383 U.S. 375, 384 (1966). This statutory requirement in §4247 goes further than the Sixth Amendment *right* to counsel; instead, it *mandates* counsel. *See United States v. Ross*, 703 F.3d 856, 868 (6th Cir. 2012) (finding the district court erred in failing to appoint counsel to represent the defendant at his competency hearing); *United States v. Kowalczyk*, 805 F.3d 847, 857 (9th Cir. 2015) (holding a person whose competence to stand trial was in question cannot legally waive his right to counsel, and is entitled to be represented by an attorney at his competency proceedings). In other words, a defendant may not be permitted to waive counsel while the issue of his competency is pending. *See United States v. Zedner*, 193 F.3d 562, 567 (2d Cir.1999); *United States v. Klat*, 156 F.3d 1258, 1263 (D.C. Cir. 1998); *United States v. Purnett*, 910 F.2d 51, 52 (2d Cir.1990). Thus, a pro se defendant cannot

represent himself at his own competency hearing, even assuming *arguendo* that there was a valid Sixth Amendment waiver of his right to counsel prior to the hearing.

In the instant case, questions regarding Mr. Sterling's competence were raised early on and continued to be an issue throughout sentencing. At the first hearing on the motion to proceed pro se, the Government advised the court that there "was some talk of Mr. Sterling potentially harming himself." ROA.3723. As a result, a condition of Mr. Sterling's pre-trial release was an evaluation by pretrial services.[1] ROA.3722-3723. Mr. Sterling met with a psychiatrist two to three times. ROA.3725-3726, 3769. He was diagnosed with acute stress syndrome and offered psychotherapy. ROA.10076, 10095. He also expressed during the evaluation that the reason his accounts were seized and he couldn't hire a lawyer was that the Government just wanted the money. ROA.10074-10075.

Yet, it was not until months later that the court ordered a competency evaluation and hearing. The district court had appointed

---

[1] This report is not in the record and there are various asserted findings that resulted from this initial evaluation of Mr. Sterling.

standby counsel when it allowed Mr. Sterling to proceed pro se, however, this was insufficient to protect his rights. Standby counsel was present at the competency hearing, but did not actively participate. ROA.7070-7114. Mr. Sterling attempted to ask Dr. Thompson some questions, but the court ordered Dr. Thompson not to answer as the court believed the questions were not appropriate. ROA.7110-7111. As a result, Dr. Thompson was not cross-examined nor was there any other evidence or testimony presented by Mr. Sterling.

But even if Mr. Sterling's standby counsel had participated in the competency hearing, this Court has held that standby counsel is not enough to fulfill the Sixth amendment requirement of counsel. *Virgil*, 444 F.3d at 453 (5th Cir. 2006); *United States v. Davis*, 269 F.3d 514, 520 (5th Cir. 2001). Accordingly, the presence of standby counsel is not sufficient to meet the requirement that a defendant must have representation at his own competency hearing.

**D. The district court erred in finding that the defendant was competent to represent himself at trial.**

    *i.   Relevant Facts*

        *a. Competency Evaluation*

On July 12, 2021, the court ordered the defendant to submit to a psychiatric evaluation by Dr. John W. Thomson to determine his competency. ROA.9878-9879. Dr. Thompson performed the evaluation over zoom. ROA.7086. In preparing his report, Dr. Thompson heavily relied on factual information provided by the Government regarding the charges and the self-reported information of Mr. Sterling. ROA.10067-10080. The only medical information Dr. Thompson relied on was the court ordered evaluation from pre-trial services where Mr. Sterling denied any past mental health issues or treatments. ROA.10074-10076.

According to Dr. Thompson's report, one issue he identified was that Mr. Sterling could not identify the exact number of years he might be facing but knew that it was a significant amount of time. ROA.10058. The report also noted mild anxiety and depressive symptoms, but as documented in his medical history discussed below, the severity of these mental health issues varies over time.  ROA.10059. On August 2, 2021 Dr. Thompson submitted his written evaluation which recommended to

the court a finding that Mr. Sterling was competent to stand trial and that he voluntarily, knowingly, and intelligently waived his right to representation. ROA.7074, 10065.

### b. Competency Hearing

One day after receiving Dr. Thompson's report, the court ordered a competency hearing for September 22, 2021. ROA.9931. Dr. Thompson testified that he has only assessed a defendant's ability to voluntarily, knowingly, and intelligently waive a sixth amendment right to counsel "less than a handful" of times ROA.7082. Dr. Thompson also testified that Mr. Sterling told him that he would trust and work with a paid lawyer. ROA.7095. Mr. Sterling also told Dr. Thompson that he would have gotten a paid lawyer if he had the money so his option was either a court-appointed lawyer or to represent himself. ROA.7096.

Dr. Thompson also stated that he believed Mr. Sterling was minimizing his criminal history during the evaluation. ROA.7102. Mr. Sterling attempted to cross-examine Dr. Thompson, by asking: "While doing your assessment, if I gave you false information, would that be my fault or yours?" ROA.7111. However, the court instructed Dr. Thompson

not to answer. ROA.7111. Mr. Sterling tried to ask two additional questions but the court did not allow them to be answered. ROA.7110.

After the hearing, the district court concluded that Mr. Sterling was competent to stand trial and represent himself. ROA.9937-9938.

### i.    Standard of Review

"In reviewing competency determinations, this Court must re-analyze the facts and take a hard look at the trial judge's ultimate conclusion, which we leave undisturbed unless it is clearly arbitrary or unwarranted." *United States v. Villanueva*, 21-40356, 2022 WL 2067840, at *1 (5th Cir. June 7, 2022), cert. denied, 143 S. Ct. 335 (2022) (*citing United States v. Doke*, 171 F.3d 240, 247 (5th Cir. 1999) (internal citation omitted).

### ii.    General Legal Standards

The right to due process is violated when a legally incompetent person is tried for a criminal offense. *Pate v. Robinson*, 383 U.S. 375, 385 (1966); *Cooper v. Oklahoma*, 517 U.S. 348, 369 (1996). In other words, a criminal defendant may not be tried unless he is competent. *Drope v. Missouri*, 420 U.S. 162, 171 (1975). The *Dusky* standard for competence to stand trial is whether the defendant has "sufficient present ability to

consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Id* at 172 (quoting *Dusky v. United States*, 362 U.S. 402 (1960).)

### c. The Farretta Waiver

The landmark case *Faretta v. California* recognized the constitutional right to self-representation by holding that the Sixth Amendment provides a criminal defendant the right to proceed without counsel when he or she voluntarily, knowingly, and intelligently elects to do so. *See* 422 U.S. 806, 806 (1975); *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (referring to *Faretta* as "the Court's foundational 'self-representation' case"). However, while *Faretta* concluded that a right to self-representation exists, *Faretta* did not raise a mental competency question because the defendant was "literate, competent, and understanding." *Indiana v. Edwards*, 554 U.S. 164, 171 (2008). In other words, *Faretta* did not consider the standard of competency to be applied when, as here, a defendant wishes to proceed pro se. *Id*.

### d. *Godinez v. Moran*

*Godinez v. Moran* purported to answer this question by finding that the level of competency one needs to represent oneself at trial was simply the same level of competence one needed to stand trial – that the defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 401 (1993) (citing *Dusky v. United States*, 362 U.S. 402 (1960)).

Importantly though, *Godinez* only addressed the level of competency that is constitutionally required when a defendant sought to waive counsel and subsequently enter a guilty plea. 362 U.S. at 398. *Godinez* treated the competence to plead guilty and the competence to waive the right to counsel as two separate issues – it "reject[ed] the notion that competence to plead guilty *or* to waive the right to counsel must be measured by a standard that is higher than (or even different from) the *Dusky* standard." *Id* (emphasis added). This distinction is made clear when *Godinez* cites back to *Faretta:* "the competence that is required of a defendant seeking to *waive the right* to counsel is the competence to waive

the right, not the competence to represent himself." *Id* at 399. Thus, *Godinez* is not dispositive here because the defendant's ability to conduct a defense at trial was expressly not at issue in that case. *Godinez*, 509 U.S. at 399-400; *Edwards,* 554 U.S. at 128.

### e. Indiana v. Edwards

On point here*, Indiana v. Edwards* addressed the question of whether the Sixth Amendment right to self-representation was violated by requiring a defendant to satisfy a competency standard higher than the *Dusky* standard when that defendant not only wished to waive counsel but to also conduct his or her own trial proceedings. *Edwards*, 554 U.S. at 167. *Edwards* expressly stated that *Godinez* does not provide an answer to this issue. *Id* at 173. In *Edwards*, the defendant suffered with serious thinking difficulties and delusions, with one psychiatric report diagnosing him with schizophrenia. *Id* at 169. After various outcomes from medical evaluations and competency hearings, the district court concluded that the defendant was competent to stand trial but not competent to defend himself. *Id*. Applying *Farretta* and *Godinez*, the state appellate courts disagreed, holding that the trial court was required to allow the defendant to represent himself. *Id*.

The Supreme Court vacated the reversal, concluding that a court may deny a "gray-area" defendant the right to represent himself without violating his Sixth Amendment right of self-representation by permitting judges to take a realistic account of the particular defendant's mental capacities. Id at 177. *Edwards* further reasoned that by setting forth a standard that focuses directly upon a defendant's ability to consult with his lawyer, *Dusky* assumes representation of counsel and emphasize counsel's importance, thus suggesting that choosing to forgo trial counsel presents a very different set of circumstances. *Id* a 174-175. A key component of this reasoning was the Court's recognition that:

> Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways.

*Id* at 175. Essentially, an individual may be able to satisfy the *Dusky* standard, but he "may very well be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without help of counsel." *Id* at 175. And *Dusky's* competency standard alone may inadequately protect gray-area defendant's right to a fair trial. *Id* at 178.

### iii. Discussion

In the instant case, the severity of Mr. Sterling's mental health issues varied through time, but nevertheless affected his ability under *Dusky* and *Edwards*. Under *Dusky*, a "district court can consider several factors in evaluating competency, including, but not limited to, its own observations of the defendant's demeanor and behavior; medical testimony; and the observations of other individuals that have interacted with the defendant." *United States v. Simpson*, 645 F.3d 300, 306 (5th Cir. 2011).

This Court has applied the *Edwards* rule to "the 'exceptional' situation where a defendant is found competent to stand trial and elects to appear pro se, but is so severely mentally ill that his self-representation threatens an improper conviction or sentence. *United States v. Fields*, 761 F.3d 443, 467 (5th Cir.2014), as revised (Sept. 2, 2014). This situation is precisely at issue here. In the instant case, Mr. Sterling's mental health was a concern before the court early on, but began well before his indictment. His mental health continued to be an issue up until sentencing, as discussed more fully below.

The record demonstrates instances where Mr. Sterling did not have a rational or factual understanding of the proceedings against him under *Dusky*. For example, midtrial, Mr. Sterling filed an affidavit into the record titled "Affidavit of Denial of Corporation Existence" which denied the existence of the United States, the State of Louisiana, The Parish of East Baton Rouge, the United States District Court for the Middle District of Louisiana, etc. ROA.1056. In at least two instances, Mr. Sterling had outbursts during the trial. Mr. Sterling pointed and called to specific jurors to answer his questions. ROA.4904. The Government believed this behavior was "outrageous" and contemplated whether it should request a mistrial. ROA.4904. Also, during closing argument, Mr. Sterling continued to yell at the jurors, ignoring the court's orders to stop. ROA.6862-6863.

The court has a continuing duty to inquire into a defendant's competency. See United States v. Ross, 703 F.3d 856, 869 (6th Cir. 2012). Moreover, it is fundamentally unfair to judge Mr. Sterling's competency by his ability to consult with a lawyer when he represented himself. See Edwards, 554 U.S. at 174-175. In this case, Dr. Thompson performed his evaluation specifically to determine whether Mr. Sterling could proceed

to trial pro se. Dr. Thompson also specifically used the Dusky standard in his evaluation which determines whether a defendant will work well with their attorney. ROA.7087. Dusky presumes representation by counsel and is unsuitable to evaluate a defendant's ability to competently proceed to trial and represent themselves. See Edwards, 554 U.S. at 174-175. To rely on only one unsuitable competency test is to ignore the very nature of mental illness. See Id.

## E. The district court abused its discretion in denying Mr. Sterling's motion for a competency evaluation and hearing before sentencing.

### i.  Relevant Facts

On June 16, 2022, post-trial counsel for Mr. Sterling filed a motion to determine competency. ROA.10030-10036. Counsel urged the court for another competency evaluation and hearing due to Mr. Sterling's behavior over the past few months, which included recommendations and diagnoses of mental health professionals, two hospitalizations for mental health purposes, and his inability to understand and contribute meaningfully in preparations for his sentencing hearing. ROA.10004. Numerous medical records were filed into the record in support of this request.

Mr. Sterling's psychiatric history demonstrated in his medical records shows impairment far greater than what one would expect of an ordinary criminal defendant awaiting trial. Indeed, the stresses of his criminal prosecution and issues with his representation compounded his preexisting mental illness in a very serious way.

As early as 2014, Mr. Sterling's medical records indicate a history of mental illness. He reported symptoms consistent with major depressive disorder and post-traumatic stress following a motor vehicle accident. ROA.10007. He was referred to a mental health provider at that time. ROA.10008-10009. These symptoms recurred in 2020 following the death of Mr. Sterling's girlfriend. ROA.10011. While these records represent the extent of Mr. Sterling's pretrial mental health treatment, his post-trial mental health records show serious impairment that undoubtedly affected his trial competency.

Mr. Sterling was admitted to the Bridge Center for Hope, a crisis stabilization facility, for auditory hallucinations and suicidal ideations on May 3, 2022, two months after his trial began. ROA.11698. He spent five days in this facility before being discharged. ROA.11727. Bridge Center designated Mr. Sterling as high risk for self-harm based on

recurrent suicidal intentions and loss of hope. ROA.11703. This evaluation confirmed Mr. Sterling's psychiatric history of major depressive disorder predating his criminal charges. ROA.11705.

Mr. Sterling followed up with Baton Rouge Behavioral Health for more consistent treatment about two weeks after his discharge from Bridge Center. ROA.11729. His complaints and patient history were consistent with his prior treatment, relaying that he heard voices encouraging him to end his life. ROA.11731. His treatment continued with Oceans Intensive Outpatient Program where he was prescribed Lexapro (an antidepressant/antianxiety medication) and Risperdal (an antipsychotic medication). ROA.11778. He also participated in group therapy. ROA.11787.

These records show a previously unreported history of self-harm ideations and trauma related to the criminal justice system. Mr. Sterling personally witnessed the killing of his cousin, Alton Sterling, under circumstances that shook the Baton Rouge community and the nation. ROA.10044. This is when his suicidal ideations began, continuing up to and through his admission to the Bridge Center facility. ROA.10045. Mr. Sterling also complained of auditory hallucinations and delusions

concerning the Government specifically and this case generally beginning more than nine months before trial. *Id.* On occasion, these hallucinations encouraged him to commit suicide. ROA.11731. The records show no indications or accusations of malingering or fabrication.

At the sentencing hearing, post-trial counsel again brought up to the court that counsel believed Mr. Sterling was "struggling with some very deep mental health concerns" and was "very, very troubled mentally." ROA.7047. Counsel urged the court that Mr. Sterling was in need of rehabilitative treatment for these issues. ROA.7047-7048. The Government did not oppose the request for medical treatment, but stated that the treatment could be provided by the Bureau of Prisons Facility and incarceration. ROA.7049. Upon sentencing Mr. Sterling to imprisonment for a total of 132 months, the court recommended that Mr. Sterling be incarcerated in a facility capable of providing mental health treatment. ROA.7057.

ii.   *Standard of Review*

"An abuse of discretion standard applied to the district court's failure to *sua sponte* conduct a mental competency hearing and its denial

of the defense's motion for a mental competency evaluation." *United States v. Flores-Martinez*, 677 F.3d 699, 706 (5th Cir. 2012).

### iii.    General Legal Standards

"The due process clause also guarantees to a criminal defendant procedures adequate to guard his right not to stand trial or suffer conviction while incompetent." *United States v. Agbonifo*, 20-20293, 2022 WL 808001, at *4 (5th Cir. Mar. 16, 2022); *Flores-Martinez*, 677 F.3d at 706. A motion to determine competency may be filed at any time after prosecution commences and before the accused is sentenced. 18 U.S.C. § 4241(a). The court is required to grant a motion to determine competency if there is "reasonable cause" to believe that the accused is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id*.

### iv.    Discussion

#### a. "Reasonable Cause" Standard

In determining whether there is a reasonable cause to declare the defendant incompetent, appoint an examiner, or to order a hearing on

that question, a trial court must consider all evidence before it, including evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning competence. *See Drope*, 420 U.S. at 180; *Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987); *Thompson v. Blackburn*, 776 F.2d 118, 123 (5th Cir. 1985). "[E]ven one of these factors standing alone may, in some circumstances, be sufficient." *Drope*, 420 U.S. at 180.

When Mr. Sterling's post-trial counsel joined the case, Mr. Sterling had an established history of severe mental health issues. ROA.10035. Most troubling was that while awaiting sentencing, he had two hospitalizations, was suffering from psychosis, and reported experiencing auditory hallucinations. ROA.10035. Without Mr. Sterling's necessary input in preparing PSR objections and for sentencing proceedings, he was unable to assist counsel in his defense. ROA.10035. Additionally, Mr. Sterling was consistently exhibiting, in conversations with counsel, that he did not understand – or lacked the capacity to understand – the nature and seriousness of the charges against him. ROA.10035.

Given Mr. Sterling's behavior, the submitted medical records, and the diagnosis of medical professionals, there was reasonable cause for

counsel to motion the court to determine competency. *See White v. United States*, 470 F.2d 727, 728 (5th Cir. 1972) (there were sufficient grounds to require an examination for determination of competency where defendant was recently committed for an undetermined amount of time, had a nervous breakdown, and was released against medical advice); *United States v. McEachern*, 465 F.2d 833, 839 (5th Cir. 1972), cert. denied, 409 U.S. 1043 (1972) (there was reasonable cause to believe the defendant might lack the requisite competency, entitling the defendant to a competency examination, based on conclusions of medical officers during a previous confinement that the defendant was psychotic).

### b. *Appointment of Examiner and Competency Hearing*

When a motion for competency sets forth reasonable cause to believe the accused is incompetent, the Court must grant an examination. *See McEachern*, 465 F.2d at 837. While a defendant's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue. *Pate v. Robinson*, 383 U.S. 375, 386 (1966). Further, mental alertness and understanding displayed before the court does not justify a court's ignorance of a defendant's medical history. See *id*.

Here, the district court relied heavily on Dr. Thompson's evaluation – which notably did not take into consideration Mr. Sterling's full medical history provided to the court to show reasonable cause. ROA.7157-7160. The district court also heavily relied on Mr. Sterling's demeanor at trial, noting that Mr. Sterling was not "babbling incoherently." ROA.7161. *Compare Edwards*, 554 U.S. at 175 ("Mental illness itself is not a unitary concept.") Accordingly, the district court abused its discretion in failing to grant the motion to determine competency which would have resulted in a necessary medical evaluation and competency hearing for Mr. Sterling.

### c. *The Court's Continuing Duty*

"Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *United States v. Ross*, 703 F.3d 856, 869 (6th Cir. 2012). "Indeed, under the federal statute, the district court has not only the prerogative, but the duty, to inquire into a defendant's competency whenever there is 'reasonable cause to believe' that the

defendant is incompetent to stand trial." *United States v. White*, 887 F.2d 705, 709 (6th Cir. 1989); *Ross*, 703 F.3d at 869.

In the instant case, the district court was made aware of Mr. Sterling's worsening mental health but failed to re-evaluate his competency at that stage of the proceedings, as is the duty of the court. Accordingly, the district court abused its discretion in failing to grant the motion to determine competency. As a result, Mr. Sterling's procedural due process rights were violated.

## X.    CONCLUSION

For the foregoing reasons, this Court should reverse Mr. Sterling's conviction and sentence because of the constitutional violations and the district court's errors.

Respectfully submitted,

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON, La. Bar. No. 34821
JEIGH L. BRITTON, La. Bar No. 39820
Winston Bergeron, LLP
1700 Josephine Street
New Orleans, Louisiana 70113
Telephone: 504-577-2500
Facsimile: 504-577-2652
Email: sam@winstonbergeron.com
jeigh@winstonbergeron.com

# XI.    CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2023, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CMF/ECF system.

/s/ Samuel H. Winston
SAMUEL H. WINSTON
Attorney for Appellant

## XII.   CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,012 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word version 16.74 in Century Schoolbook 14 pt.

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON
Attorney for Appellant